UNITED STATES of America,

v.

Harold **BARKSDALE.**

Crim. A. No. 70–493.

United States District Court,
E. D. Pennsylvania.

Jan. 12, 1973.

Robert E. Curran, U. S. Atty., Barton A. Hertzbach, Asst. U. S. Atty., for the United States.

Robert M. Abramson, Philadelphia, Pa., for Barksdale.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, District Judge.

Presently before the Court is the Motion for a New Trial filed by Harold Barksdale. The defendant was found guilty by a jury on September 23, 1971 on Counts 6 and 8 of aiding and abetting Nathaniel Adderly in the sale of narcotics which was in violation of 18 U.S.C. § 2 and 26 U.S.C. §§ 4704(a) and 4705(a).

The defendant alleges that the Assistant United States Attorney, Charles B. Burr, Esquire, deceived the Court and the jury in not advising them that when a codefendant, Nathaniel Adderly, testified as a government witness against the defendant, that Adderly had been offered promises of leniency and/or inducements when he pleaded guilty. In effect, Adderly was a sham defendant against Barksdale.

Adderly on May 10, 1971, pleaded guilty to two of the six counts that he was charged with in the Indictment. The two counts that Adderly pleaded guilty were non-mandatory counts. The other four counts were to be dismissed at the time of sentencing (Docket No. 20, May 10, 1971).

The main thrust of Adderly's testimony dealt with a sale of narcotics on Jan-

uary 23, 1970. Adderly testifies that he had a purchaser for six bundles of heroin. Adderly discussed the sale with Barksdale and Barksdale spoke with a man named Ross, the purchaser. Barksdale told Adderly to get the narcotics from under the front seat of Barksdale's car. Adderly sold the narcotics to Ross and a man named Thrift who turned out to be an undercover agent. Thrift gave $450.00 to Ross who in turn gave the money to Adderly. Adderly took the money back to Barksdale and Barksdale gave Adderly $30.00 for his services.

During the trial, there were various questions that were asked of Adderly, by both counsel, of whether or not any promises of leniency or inducements had been given to Adderly for testifying against Barksdale. Adderly testified that he did not know of any promises or inducements [N.T. Trial (hereafter N.T.) N.T. 25, 75–80 and 84–85].

On September 27, 1971 (four days after Barksdale's conviction) the government filed a Motion to Dismiss all counts of the indictment against Adderly. The reason for the government's motion was that Adderly was a second offender of the Federal Narcotics Laws, which was unknown to all counsel at the time he entered his plea, and this would not have met the requirements of Rule 11 of the Federal Rules of Criminal Procedure (See Exhibit I of Government's Answer to Defendant's Amended Motion for a New Trial). On January 26, 1972 the Court granted Adderly's Motion to withdraw his plea of guilty and Adderly pleaded not guilty to all counts of the indictment. Thereafter, on January 27, 1972 the Court granted the government's Motion to Dismiss the Indictment against Adderly.

On May 26, 1972 a post-trial hearing was held in order to find out if Adderly had been promised any leniency or other inducements by the government. The two principal witnesses were Joseph Bongiovanni, III, Esquire, Adderly's attorney and Charles B. Burr, Esquire, the former Assistant United States Attorney who prosecuted the case against Harold Barksdale.

Mr. Bongiovanni testified, in effect, that he had discussions with Mr. Burr in which he, Mr. Bongiovanni, wanted some concession on sentencing from Mr. Burr. Mr. Burr indicated that the government would make no recommendation as to the sentence imposed by the Court [Post-Trial Hearing on May 26, 1972 (hereafter P.T.) P.T. 14–15]. Additionally, the question of when an arrangement had been made with the U. S. Attorney's Office to dismiss the case against Adderly was brought out in direct examination of Mr. Bongiovanni (P.T. 16–21). There were two letters which were introduced, one dated August 23, 1971 (D–1) in which Mr. Bongiovanni wrote to Mr. Burr and told Mr. Burr that he would have to petition the Court for the withdrawal of Adderly's guilty plea. The other letter (D–2) dated December 29, 1972 was from Mr. Bongiovanni and addressed to this Court with a carbon copy to Thomas McBride, Esquire, Assistant United States Attorney, who was handling the case at that time. Mr. Bongiovanni said that he would file a formal motion to withdraw Adderly's guilty plea and that the U. S. Attorney's Office would not be opposed to the Motion.

Mr. Bongiovanni could not pinpoint the exact time that an agreement between the U. S. Attorney's Office and himself had been formalized. Mr. Bongiovanni stated that the agreement had been reached sometime in the Fall, about September, October or November (P.T. 20).

Mr. Burr testified that he did have a discussion with Mr. Bongiovanni about the Court's inability to impose a probationary sentence because of a prior conviction of a federal narcotics violation. This conversation took place around the trial of Barksdale (P.T. 31–32). Mr. Burr did not convey, at the time of Barksdale's trial, the fact that he probably would recommend the dismissal of Adderly, but he had probably spoken to Mr. Bongiovanni about the matter. At

this point, Mr. Burr felt that there was no obligation on his part to notify the Court and the Jury in the Barksdale trial of the possibility of the dismissal (P.T. 37–39). On September 24, 1971, the Justice Department by oral permission allowed the U. S. Attorney's Office to dismiss Adderly's counts (See D–4, Post-Trial Hearing). Mr. Burr felt that it was more likely than not that he had not discussed the dismissal with the Justice Department in Washington prior to September 24, 1971 (P.T. 45–46).

The defendant relies on two recent cases for his Motion for a New Trial. First, in Giglio v. United States, 405 U. S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Supreme Court held where the government failed to disclose an alleged promise of leniency made to a key witness in return for his testimony is a violation of due process because it was the prosecutor's duty to present all material evidence to the jury. The Court beginning on page 153, 92 S.Ct. on page 766 stated the basis for its holding.

> As long ago as Mooney v. Holohan, 294 U.S. 103 [112, 55 S.Ct. 340, 79 L. Ed. 791] (1935), this Court made clear that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with "rudimentary demands of justice." This was reaffirmed in Pyle v. Kansas, 317 U.S. 213, [63 S.Ct. 177, 87 L.Ed. 214] (1942). In Napue v. Illinois, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217] (1959), we said, "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Id., at 269 [79 S.Ct. 1173 at 1177]. Thereafter Brady v. Maryland, 373 U.S. at 83 [83 S.Ct. 1194, 10 L.Ed.2d 215 (1962)] held that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution." See A[merican] B[ar] A[ssociation, Project on] Standards for Criminal Justice, Prosecution Function and the Defense Function, § 3.11(a). When the "reliability of a given witness may

well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within this general rule. Napue, supra, at 269 [79 S.Ct. 1173 at 1177]. We do not, however, automatically require a new trial whenever "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . .." United States v. Keogh, 391 F.2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under Brady, supra, at 87 [83 S.Ct. 1194 at 1196]. A new trial is required if "the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .." Napue, supra, at 271 [79 S.Ct. 1173].

Secondly, in United States v. Rispo, 460 F.2d 965 (3rd Cir. 1972), it was held that a joint trial of the defendants along with a co-defendant who was a government informer both before and during the trial, and the government failed to disclose this fact to the Court, co-defendants' counsel and even counsel for the sham defendant is a violation of due process.

■ Initially, when Adderly pleaded guilty to two of the six counts on May 10, 1971, there was an indication in the docket entry that the remaining four counts would be dismissed at the time of sentencing. This was a public record which was readily available and defense counsel by the use of due diligence could have discovered this fact. Therefore, as to these four counts, the defendant is not entitled to relief based upon Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See Thomas v. United States, 343 F.2d 49 (9th Cir. 1965).

We must now turn to the two counts which Adderly pleaded guilty to on May 10, 1971 and were dismissed by this Court on January 27, 1972. The key issue as to these two counts is: did the government attorney know at the time

of Barksdale's trial that the two counts would be dismissed and if he did know, was there any reasonable likelihood that the evidence would have affected the result if known at the trial.

■ The government attorney had sufficient knowledge that the indictment would probably be dismissed against Adderly during Barksdale's trial which concluded on September 23, 1971. The letter (D-1, post-trial hearing) of August 23, 1971 from Mr. Bongiovanni to Mr. Burr certainly put Mr. Burr on notice that there were some problems which existed as to Adderly's guilty plea and possible probation. The letter taken with Exhibit D-4 of the post-trial hearing showed that oral authority to dismiss all counts of the indictment against Adderly was given on September 24, 1971 (one day after the conclusion of the Barksdale trial). The inference that can and must be drawn is that the U. S. Attorney's Office knew that they would be asking for the dismissal of the indictment against Adderly during Barksdale's trial. However, it does not appear that this was an intentional non-disclosure by the U. S. Attorney, but it was more inadvertence by the prosecutor because of the preparation for and the trial of Barksdale. However, *Brady*, supra, at 87, 83 S.Ct. 1194 held that the suppression of material evidence justifies a new trial whether or not the prosecution acted in good or bad faith.

We must now address ourselves to the second part of our question: was there any reasonable likelihood that the nondisclosure of Adderly's dismissal would have affected the jury. The answer is in the negative. This answer would be different if: 1. Adderly did not have the extensive police record which was introduced into evidence at the trial (N.T. 74–80), 2. the use of Adderly's statement to the Bureau of Narcotics and Dangerous Drugs by defense counsel (N.T. 32), 3. the extensive cross-examination of Adderly by defense counsel and 4. the Court's Charge on credibility (N.T. 160–161), prior convictions of a felon (N.T. 161), accomplice testimony (N.T. 161) and *falsus in uno falsus in omnibus* (N.T. 162). If ever a witness was discredited or impeached, it was Adderly. However, the jury did believe his testimony taken together with all the other evidence in finding Barksdale guilty. There is no reasonable likelihood that the failure to mention the dismissal of the case against Adderly would have changed the jury's decision. Moreover, there was Thrift's testimony which corroborated Adderly's testimony. See *Schneble v. Florida*, 405 U.S. 427, 92 S. Ct. 1056, 31 L.Ed.2d 340 (1971) and Chief Judge Seitz's concurring Opinion in *United States v. DeCarlo*, 458 F.2d 358, 371 (3rd Cir. 1972). At best, the failure to disclose the dismissal was harmless error, *Schneble* at page 432, 92 S.Ct. 1056, supra.

The defendant relies on *Rispo*, supra, in his contention that Adderly was a sham defendant. In *Rispo*, supra, the government attorney knew that a co-defendant was a paid informer and that he would be dismissed out after the case was over. Here, Adderly's dismissal was not crystalized until September 24, 1971. Mr. Burr in his testimony spoke in terms of probability of dismissal and not actual knowledge (P.T. 38).

Adderly was not aware, in any degree, that the case would be dismissed or that he would get any leniency from the Court or the U. S. Attorney's Office for his cooperation. Whereas, in *Rispo*, supra, the sham defendant knew all along what his position was and that the case against him would be dismissed. There was no violation of due process since the testimony by Adderly as to any promises or inducements was true to the best of his knowledge. See *United States ex rel. Dale v. Williams*, 459 F.2d 763 (3rd Cir. 1972).

The other point which was raised as to how Barksdale paid Adderly off in drugs (N.T. 81) was cured by the Court's Charge on this matter (N.T. 163).

For the reasons stated above, the defendant's Motion for a New Trial will be denied.